UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ONBOARD THE M/T PEGAS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9256860,<br><br>Defendant. | Case: 1:22−cv−01554<br>Assigned To : Mehta, Amit P.<br>Assign. Date : 6/2/2022<br>Description: Gen. Civil (E−DECK)<br><br>Civil A. No. _____<br><br>**UNDER SEAL** |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia, brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely all petroleum-product cargo (the "Defendant Property") onboard the Motor Tanker ("M/T") PEGAS (International Maritime Organization ("IMO") No. 9256860) (the "Pegas")[1] at the time of its detention by authorities of the Hellenic Republic (also referred to herein as "Greece" or, in the possessive, as "Greek") in April 2022, in connection with the enforcement of a U.S. seizure warrant issued by this Court on April 15, 2022, and alleges as follows.

## NATURE OF ACTION AND THE DEFENDANT IN REM

1. This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI") involving Iran's

---

[1] It is the government's understanding that the name of the tanker is in the process of being changed from the Pegas to the "Lana," but the IMO Number of the vessel remains unchanged.

transportation and sale of oil products to benefit sanctioned Iranian entities. This action seeks to forfeit the Defendant Property, which originated from a National Iranian Tanker Company ("NITC") tanker in Iran where it was transferred to other vessels using surreptitious means to hide the Defendant Property's Iranian origin, moving the cargo into commerce by, and for the benefit of, the National Iranian Oil Company ("NIOC"), NITC, the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Qods Force ("IRGC-QF"). IRGC and IRGC-QF also have been designated as a Foreign Terrorist Organization by the U.S. Department of State. IRGC, IRGC-QF, NIOC, and NITC each has been designated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia.

2. The Defendant Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1) as foreign assets: (i) of an entity or organization engaged in the planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property: or (ii) affording a person a source of influence over such entity or organization.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5. Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas.

## FACTS GIVING RISE TO FORFEITURE

**A.    RELEVANT PARTICIPANTS IN THE IRANIAN OIL INDUSTRY**

6. The IRGC is a branch of the Iranian Armed Forces whose purpose is to defend the country's political system. According to OFAC, the IRGC and its major holdings are a dominant presence in Iran's commercial and financial sectors, controlling multi-billion-dollar businesses and

maintaining extensive economic interests in the oil industry. *See* https://home.treasury.gov/news/press-releases/sm703. On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order ("E.O.") 13,224 for providing material support to the IRGC-QF, including by providing training, personnel, and military equipment. *See* https://www.treasury.gov/press-center/press-releases/Pages/sm0177.

7. The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations. On October 25, 2007, the Department of the Treasury designated the IRGC-QF pursuant to Executive Order No. 13,224 "for providing material support to the Taliban and other terrorist organizations." *See* https://www.treasury.gov/press-center/press-releases/pages/hp644.

8. On April 15, 2019, the U.S. Department of State designated IRGC and its aliases, including IRGC-QF, as a foreign terrorist organization. 84 Fed. Reg. 15,278. In its press release, the State Department observed that "the IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign." *See* https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html.

9. IRGC-QF official Rostam Qasemi, AKA Rostam Ghasemi, who previously served as the Iranian Minister of Petroleum from 2011 to 2013, "manages a group of individuals, shipping and oil companies, and vessels to sell Iranian crude, condensates, and gas oil." https://home.treasury.gov/news/press-releases/sm767. On September 4, 2019, OFAC designated Qasemi "for acting for or on behalf of the IRGC-QF and IRGC-QF Commander Qasem Soleimani." *Id.* Following the death of Soleimani in 2020, Qasemi "assumed a portion of former IRGC-QF Commander Qasem Soleimani's role in facilitating shipments of oil and petroleum products for

the financial benefit of the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

10. According to OFAC, "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme." *See* https://home.treasury.gov/news/press-releases/sm1165. On October 26, 2020, OFAC designated the Iranian Ministry of Petroleum pursuant to E.O. 13,224, as amended, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *Id.*

11. NIOC is an oil and natural gas producer and distributor owned by the Iranian government. The Iranian Ministry of Petroleum oversees NIOC, which "is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran." *See* https://home.treasury.gov/news/press-releases/sm1165. According to OFAC, NIOC is "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's [IRGC-QF] and its terrorist proxies." *See* https://home.treasury.gov/news/press-releases/sm885. OFAC has found that NIOC supplies crude oil and condensate sold by the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm767. On September 24, 2012, the U.S. Department of the Treasury submitted a report to Congress, as required by the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), finding that NIOC was an agent or affiliate of the IRGC. *See* https://www.treasury.gov/press-center/press-releases/Pages/tg1718. On October 26, 2020, OFAC designated NIOC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

12. NITC is a subsidiary of NIOC and "is responsible for the transportation of Iranian crude exports." *See* https://home.treasury.gov/news/press-releases/sm1165. According to OFAC, "NITC has also played a significant role in oil deals used to generate revenue for the IRGC-QF and Hizballah," *id.*, and has provided vessels for use in IRGC-QF oil operations, s*ee* https://home.treasury.gov/news/press-releases/sm767. NITC has used front companies to obscure its involvement in such oil shipments. *See* https://home.treasury.gov/news/press-releases/sm1165 ("Furthermore, in order to obfuscate its involvement in shipping activity, NITC set up a front company in the United Arab Emirates (UAE), Atlas Ship Management. NITC officials also arranged to create a separate UAE-based front company, Atlantic Ship Management Company, ostensibly as an entity to replace Atlas Ship Management."). On November 5, 2018, OFAC designated NITC pursuant to E.O. 13,599 for its connections to the Government of Iran and its role in the Iranian shipping sector. *See* https://home.treasury.gov/news/press-releases/sm541. On October 26, 2020, OFAC designated NITC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

**B. IMPORTANCE OF PETROLEUM AND SHIPPING INDUSTRIES TO THE IRGC**

13. OFAC has observed that IRGC-QF deliberately utilizes a "complex network of intermediaries," including "dozens of ship managers, vessels, and facilitators," for the purpose of "obfuscate[ing] its involvement in selling Iranian oil." *See* https://home.treasury.gov/news/press-releases/sm767. In spring 2019 alone, one IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil and had taken steps to hide Iranian, IRGC, and NIOC involvement in certain transactions. *Id.* These shipments, taken collectively, sold for more than half a billion dollars. *Id.* The same network also sold nearly 4 million barrels of

condensate and hundreds of thousands of barrels in gas oil, bringing in another quarter billion dollars. *Id.*

14. In designating NIOC and NITC under E.O. 13,224, OFAC reported: "NIOC and NITC provide both the oil and tankers for the sale of Iranian oil by the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165. "The cooperation and coordination between the IRGC-QF and these entities extends well beyond the simple sale of oil, including coordination between NIOC and the Central Bank of Iran to facilitate the collection of tens of millions of dollars in proceeds from the sale of oil that benefitted the IRGC-QF." *Id.*

15. According to OFAC, the IRGC uses the proceeds from its involvement in the oil industry and other sectors of the Iranian economy to "support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad." *See* https://home.treasury.gov/news/press-releases/sm703. OFAC has reported that "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." *See* https://home.treasury.gov/news/press-releases/sm885. Then Treasury Secretary Steven T. Mnuchin added: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." *Id.*

**C.  THE DEFENDANT PROPERTY ORIGINATED FROM KHARG ISLAND, IRAN, AND WAS LOADED ONTO THE PEGAS VIA SHIP-TO-SHIP TRANSFER.**

16. On or about September 24, 2020, the M/T Rima (IMO No. 9150377) (the "Rima") received the Defendant Property from the M/T Stream (IMO No. 9569633) (the "Stream"), a vessel owned by NITC, via a ship-to-ship transfer at the Kharg Island, Iran anchorage (the area outside the port where vessels are permitted by the port to anchor). The Kharg Island port is an oil terminal

that is owned and operated by NIOC, and the petroleum products obtained from that terminal are likewise owned by NIOC. Accordingly, the Defendant Property loaded on the Rima on September 24, 2020, was NIOC-owned petroleum.

17. The Rima, an Iranian-flagged vessel, was purchased by or on behalf of IRGC-QF associate Amir Dianat ("Dianat"), who owns the shell company, Taif Mining Services, LLC ("Taif Mining"). The Rima was purchased by or on behalf of Dianat, through Taif Mining, in 2019. Although listed in a commercial database of business registration information as being owned by a different company in Iran, the Rima is still owned and/or controlled by Taif Mining and Dianat.

18. On May 1, 2020, both Dianat and Taif Mining were designated by OFAC pursuant to E.O. 13,224, as amended. *See* https://home.treasury.gov/news/press-releases/sm995. According to OFAC, Dianat "has been involved in developing additional illicit business opportunities to generate revenue for the IRGC-QF, and in 2019, leveraged Taif Mining Services LLC, a company under his control, to procure an oil tanker." *Id*. Dianat was designated for "having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the IRGC-QF." *Id*. Taif Mining was designated for "being owned, controlled, or directed by, directly or indirectly, Amir Dianat." *Id*.

19. Dianat was the subject of criminal charges for allegedly violating money laundering and sanctions law by procuring another petroleum tanker, the *Nautic*. *See* Dep't of Just., *Criminal Charges Filed Against Two Iranian Nationals for Violating Money Laundering & Sanctions Laws by Procuring Petroleum Tanker*, https://www.justice.gov/opa/pr/criminal-charges-filed-against-two-iranian-nationals-violating-money-laundering-sanctions (May 1, 2020).

20. Transactions involving Taif Mining are similarly the subject of a publicly filed civil forfeiture enforcement action. *See United States v. $2,340,000.00 Associated With Petroleum Tanker Nautic*, Civ. A. No. 20-1139 (JEB) (D.D.C. filed May 1, 2020).

21. After receiving the Defendant Property on September 24, 2020, the Rima idled south of Kharg Island for nearly a year, acting as a floating storage for the NIOC-oil that it had obtained from the Stream at the Kharg Island anchorage.

22. On or about August 17, 2021, the Rima engaged in a ship-to-ship transfer of the Defendant Property in Iranian territorial water with the Pegas, a Russian flagged petroleum tanker believed to be owned at the time by PSB Lizing OOO ("PSB Lizing"), a subsidiary of Promsvyazbank Public Joint Stock Company ("PSB"), a Russian state-owned financial institution that finances the Russian defense industry.

23. The recipients of the cargo from the Rima knew or should have known of Rima's links to Dianat and the IRGC-QF, and that the Defendant Property transferred from the Rima to Pegas was NIOC-owned petroleum.

24. Following the ship-to-ship transfer, the Pegas changed her Automatic Identification System ("AIS") data, which transmits a ship's position so that other ships are aware of its position and can avoid collisions, to state an intended port of Kavkaz, Russia, a port on the Black Sea.

25. According to AIS data, the Pegas arrived at the Bosporus Canal in September 2021 but, unable to proceed through the canal into the Black Sea, returned to the Sea of Marmara, west of Istanbul. Although AIS data shows that the Pegas berthed at the Marmara OPET oil terminal in January 2022, the Pegas did not discharge her cargo and returned to the Sea of Marmara still carrying the Defendant Property.

26. On February 22, 2022, in response to the Russian Federation's 2022 invasion of Ukraine, OFAC designated PSB and several of its subsidiaries, including PSB Lizing, pursuant to E.O. 14,204. *See* https://home.treasury.gov/news/press-releases/jy0602. As part of that designation, OFAC identified the Pegas (along with certain other vessels in which PSB Lizing has an interest) as blocked property pursuant to E.O. 14,204. *Id*.

27. In April 2022, the Pegas was relocated to the Aegean Sea with the assistance of four Turkish tugboats.

28. On or about April 13-14, 2022, the Pegas received assistance from a Greek-flagged offshore supply ship, which brought the Pegas into Greek waters, where it was detained by Greek authorities.

29. At the time Pegas was detained by Greek authorities, the Defendant Property, acquired initially from the NITC vessel the Stream, remained on board.

30. Pursuant to a Mutual Legal Assistant Request, Greek authorities granted the United States' request for enforcement of a U.S. seizure warrant issued April 15, 2022, and effectuated seizure of the Defendant Property.

31. Pursuant to a license issued by OFAC dated April 27, 2022, and a contract with the U.S. Department of Justice, Defendant Property is in the process of being offloaded from the Pegas and transferred to two vessels via a ship-to-ship transfer within the vicinity of the Port of Karystos. The vessels are operating under an agreement with the U.S. Department of Justice, and will transport the oil to an approved facility, with an expected arrival in late June 2022. Accordingly, the United States now has control of the Defendant Property.

## COUNT ONE – FORFEITURE
## (18 U.S.C. § 981(a)(1)(G)(i))

32.The United States incorporates by reference the allegations set forth in Paragraphs 1 to 31 above as if fully set forth herein.

33.The IRGC and IRGC-QF are designated by the U.S. Department of State as foreign terrorist organizations that have engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property.

34.As described above, the Defendant Property is ultimately an asset of NITC or NIOC and was sold, or is being sold, on behalf of the IRGC or IRGC-QF. In transferring the Defendant Property for the purposes of sale, NITC provided or attempted to provide resources to IRGC or IRGC-QF, in violation of 18 U.S.C. § 2339B(a)(1). The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as an asset of NITC, an entity that engaged in the planning and perpetration of a federal crime of terrorism—namely, providing material support to foreign terrorist organizations (the IRGC and IRGC-QF).

35.Additionally, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) because it provides the persons involved in the above noted transaction a source of influence over entities and organizations—namely, NITC, NIOC, the IRGC, and IRGC-QF, who are engaged in the planning and perpetration of federal crimes of terrorism the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 27, 2022
       Washington, D.C.

                               Respectfully submitted,

                               MATTHEW M. GRAVES
                               United States Attorney

By:       */s/ Karen P.W. Seifert*
       KAREN P. W. SEIFERT
       N.Y. Bar No. 4742342

          /s/ *Jeremy S. Simon*
       JEREMY S. SIMON
       D.C. Bar No. 447956

       Assistant United States Attorneys
       601 D. Street, NW
       Washington, DC 20530
       (202) 252-7566 (main line)
       Karen.Seifert@usdoj.gov
       Jeremy.Simon@usdoj.gov

       *Attorneys for the United States of America*

## **VERIFICATION**

I, Matthew Harris, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 26th day of May 2022.


     */s/ Matthew Harris*
Special Agent Matthew Harris
Homeland Security Investigations


I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 26th day of May 2022.


     */s/ Cindy Burnham*
Special Agent Cindy Burnham
Federal Bureau of Investigation